DAVID B. KELLY, SUPERINTENDENT, DIVISION OF STATE POLICE OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN L. STERR, DEFENDANT-APPELLANT.

Argued December 4 and 5, 1972—Decided January 22, 1973.

*Mr. Patrick T. McGahn, Jr.* argued the cause for appellant (*Messrs. McGahn & Friss,* attorneys).

*Mr. Michael R. Perle,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SULLIVAN, P. J. A. D., Temporarily Assigned. Defendant John L. Sterr, appellant herein, a trooper in the service of the New Jersey State Police, was charged with violation of certain departmental rules and regulations while in the performance of his assigned duties.

He received a departmental hearing (summary court trial) before an officer designated by the Superintendent of the State Police, was found guilty and was suspended without pay and allowances, for a period of two weeks. The Appellate Division affirmed in an opinion reported at 119 *N. J. Super.* 272 (1972). Certification was granted, 61 *N. J.* 162 (1972), to review defendant's contention, rejected at the summary court trial as well as by the Appellate Division, that defendant had a constitutional right to an open or public hearing on the departmental charges against him.

Basically, defendant argues: (1) A New Jersey Police summary court trial is a quasi-judicial proceeding and "is subject to standards of fair and adequate procedure constituting due process, one of which is a public hearing"; (2) it is not enough that defendant was afforded the right to be represented by counsel, the right to call witnesses, and the right of judicial review. Since a summary court trial is "very similar to a criminal prosecution," with penal and punitive aspects, no good reason exists for denying defendant the right to a public trial guaranteed to every accused in a criminal prosecution; (3) a closed hearing always increases the likelihood of "command influence," particularly in a para-military organization such as the State Police where promotions are determined by those in command, a fact

quite evident to the hearing officer who presided at defendant's trial.

Defendant's contention that a summary court trial should be analogized to a criminal prosecution thereby bringing him within the ambit of *N. J. Const., Art.* I, *par.* 10 is without merit. The sole inquiry at defendant's departmental hearing was whether or not defendant-trooper had failed to properly carry out his assigned duties. This was not a criminal prosecution in any sense of the word and the constitutional safeguards guaranteed an accused in a criminal prosecution are not applicable.

Defendant's further contention that administrative due process requires a public hearing is also without merit. Due process is not a rigid concept. Its flexibility is in its scope once it has been determined that some process is due. It calls for such procedural protections as the particular situation demands recognizing that not all situations calling for procedural safeguards require the same kind of procedure. *Morrissey v. Brewer,* 408 *U. S.* 471, 92 S. Ct. 2593, 33 *L. Ed.* 2d 484 (1972). Relevant considerations are the public interest, the rights involved and the nature of the proceeding. The manner of holding and conducting the hearing may vary. As long as principles of basic fairness are observed and adequate procedural protections afforded, the requirements of administrative due process have been met. In *Laba v. Newark Board of Education,* 23 *N. J.* 364, 382 (1957) we said: "Absent specific legislative direction, the administrative tribunals may mold their own procedures so long as they operate fairly and conform with due process principles."

Our Administrative Procedure Act, *N. J. S. A.* 52:14B-1 *et seq.,* which applies to State Police summary court trials, is silent on the matter of whether or not an administrative hearing should be public. The Rules and Regulations for the discipline and control of the State Police, (adopted by the Superintendent pursuant to *N. J. S. A.* 53:1-10), although they set forth in detail the manner in which a dis-

ciplinary hearing shall be held and the rights and privileges accorded an accused, make no mention that the hearing shall be open to the public. New Jersey Civil Service Rule, *N. J. A. C.* 4:1–5.10(a), provides that "[h]earings not required by law to be open to the public may be held open or closed to the public, as the Commission may determine." The Federal Administrative Procedure Act, 5 *U. S. C. A.* § 551 *et seq.,* makes no provision for public hearings. Consequently federal administrative agencies are free "to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *F. C. C. v. Pottsville Broadcasting Co.,* 309 *U. S.* 134, 143, 60 S. Ct. 437, 84 *L. Ed* 656, 662 (1940), quoted in *F. C. C. v. Schreiber,* 381 *U. S.* 279, 290, 85 S. Ct. 1459, 14 *L. Ed.* 2d 383, 391 (1965).

Considering the type of hearing here involved, the subject matter thereof together with the rights at stake, we conclude that due process did not require a public hearing. However, it must be recognized that in administrative agency proceedings a public hearing has certain advantages. Obviously it promotes public confidence in the integrity and fairness of the process. It can be viewed as a restraint against the filing of frivolous or insubstantial disciplinary charges against a person. Therefore, absent a showing of good cause or sufficient reason for keeping a hearing private, the general policy favors an open administrative hearing, *Schreiber, supra,* particularly if the person involved requests it.

Here the Superintendent of the State Police has detailed the reasons why the Division maintains a policy of private hearings in Division disciplinary matters, and why retention of that policy is essential to morale and the effective operation of the Division. They are as follows:

First, public disclosure will invest disciplinary proceedings with a punitive character when their purpose is purely corrective. The exercise of good judgment is an important part of an officer's daily activities. Thousands of judgment decisions are made each day by troopers and it is inevitable

that some mistakes will be made. If review of a trooper's exercise of judgment results in the institution of disciplinary action, the final determination will only involve questions of departure from good practice, simple negligence or other employee error. Each such question has a wide range of factors related to intent, omission, seriousness of its impact on public safety, motive and the effect on the Division's discipline and operation. Public airing of matters of this nature would subject a trooper and members of his family to unwarranted and unnecessary criticism thereby lending a punitive aspect to disciplinary proceedings which is alien to the purely corrective thrust of such proceedings as they exist today.

Second, if the Division were to be required to hold public disciplinary hearings, protection of the public interest would require that some restriction be put on the present liberal discovery policy presently available, thereby impairing a trooper's ability to meet the charges against him and making the inquiry into the facts and the truth more difficult.

Public disciplinary hearings would jeopardize the security of information necessary in a police agency having statewide jurisdiction. Public knowledge of operational procedures, such as patrol schedules and methods, manpower deployment and assignment, and the like, has the obvious potential to seriously harm the public interest and safety, as well as that of the trooper.

Public disclosure would also breach the security of information necessary in unsolved crimes. It may not be possible at the time to determine what piece of information, if disclosed, may aid the perpetrator or others in concealing involvement, manufacturing alibis, concealing evidence or otherwise obstructing justice.

Third, the efficiency of the Division depends in measure upon its ability to generate public confidence. All troopers share their identity with all other members of the Division. What one member does, right or wrong, is attributed to all in the public mind. The public exposure of every departure

from good practice, or acts of simple negligence, would undoubtedly have an adverse effect upon the public confidence and thereby lessen the effectiveness of the Division.

We conclude that the foregoing statement of reasons establishes a rational and justifiable basis for the maintaining of a policy of non-public disciplinary hearings in the Division of State Police. Certainly, the policy in question has not been shown to be arbitrary in the present case. The charges preferred against defendant were related to an investigation by the State Police of two unsolved murders. We must defer to the Division's expertise in this area when it calls for the security of information involving unsolved crimes.

The contention of the "likelihood" of command influence in a private hearing has no real relevance to the inquiry whether the hearing should be open or closed. Defendant is really challenging the inherent fairness of any department disciplinary hearing conducted by a member of the same department. Certainly defendant was entitled to be tried before a fair and impartial tribunal. However, absent any indication to the contrary, we will not assume that the hearing officer in this case did not base his report and recommendations solely on the evidence. It is to be noted that defendant had an independent judicial review of his trial. The Appellate Division upheld the decision together with its underlying findings and conclusions as supported by "sufficient substantial evidence."

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges CONFORD and SULLIVAN—6.

*For reversal*—None.