847 A.2d 614 (2004)
368 N.J. Super. 564
DIVISION OF STATE POLICE, Petitioner-Respondent,
v.
Trooper Bryce MAGUIRE, Badge No. 5476, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 2, 2004.
Decided May 11, 2004.
Reynolds & Scheffler, for appellant (Steven P. Scheffler, on the brief, Northfield).
Peter C. Harvey, Attorney General, for respondent (Linda Vele Alexander, Deputy Attorney General, of counsel and on the brief).
*615 Before Judges STERN, A.A. RODRIGUEZ and LEFELT.
The opinion of the court was delivered by LEFELT, J.A.D.
The Division of State Police suspended Trooper Bryce Maguire for fifteen days without pay because of his conduct during an off-duty road-rage incident that occurred on a residential street in Galloway Township. The State Police Superintendent imposed the suspension after accepting the recommendation of a hearing officer, who had conducted the disciplinary hearing. Maguire appealed, questioning the timeliness of the disciplinary action, the sufficiency of the evidence, and the penalty. In addition to the issues raised by Maguire, we requested the parties to brief the following additional issue: In view of N.J.S.A. 52:14F-8(b), under what authority can the Division of State Police utilize a hearing officer, instead of an administrative law judge (ALJ), to conduct a trooper disciplinary hearing and make a recommended decision to the Superintendent? After considering the parties' arguments, we conclude that the Division timely filed its charges against Maguire, but we reverse and remand for a new summary discipline hearing to be conducted by an ALJ assigned by the Office of Administrative Law (OAL).

I.
In order to understand the procedural issues permeating this appeal, we first recount the relevant testimony that was presented at the disciplinary hearing followed by the key procedural points. On June 29, 2002, Trooper Maguire and Linda, his wife who was driving, and two children were riding in their Volkswagen Jetta on Magnolia Street in Galloway Township, on their way to a restaurant. Magnolia Street is a residential road with no dividing lane markings, no curbs or sidewalks, and a 25 m.p.h. speed limit. Behind the Maguire vehicle were Richard and Donna Kurtz and their two children in their new Nissan Maxima traveling to Atlantic City for dinner after enjoying a beach day in Brigantine.
Donna Kurtz, who was driving, observed the Jetta proceeding quite slowly, as if the Maguires were looking for an address. Donna believed the Jetta was going five or ten miles per hour. Linda Maguire observed the Nissan traveling behind quite fast for a residential street and very close to her vehicle. Linda testified "I'm doing thirty in a twenty-five and she's still trying to pass me, and the stop sign was coming up." When Donna tried to pass, Linda Maguire quickly moved left and blocked their passage. Donna had to immediately slow her vehicle to pull in behind the Maguires. At that point Donna believed the Maguires were crazy, and she became scared.
Donna testified the Jetta then stopped abruptly, though Linda claimed she pulled over just a few feet behind a stop sign. Trooper Maguire, who weighed about 245 lbs. at the time, ran toward the Kurtzs, though the Trooper claimed he was not running but was "moving quickly" in "a tactical walk." Donna locked her car and windows and Richard got out of the Nissan to confront the Trooper who attempted to get between the two cars, which were close together. The Trooper claimed Donna moved the car forward forcing him to jump backwards onto his car and causing him to place his foot on the Nissan's hood. Richard Kurtz saw the trooper attempt to jump between the two cars, but land with one foot on the hood of the Nissan, causing a dent and scrape. Donna Kurtz testified that the Trooper leapt like a "gorilla" or "wild maniac" onto the hood of her car.
*616 The Trooper or Linda Maguire, who had also exited her vehicle, screamed "what the fuck are you doing." Richard Kurtz yelled "All right, all right, she knows she was wrong, she'll back off, she'll back off" and "don't hurt us, don't hurt us." The Trooper testified that his wife stated "he's not going to hurt you, he's a ... State Trooper." According to Richard Kurtz, Richard raised his left arm in defense and Trooper Maguire grabbed his arm. The Trooper denies touching anyone during the confrontation or using inappropriate language.
During the entire confrontation, the Trooper never displayed his badge, though he testified to displaying his identification card. The Trooper threatened to write some tickets, but did not record any names or addresses before leaving the scene. He did not ask the driver for a driver's license because he could see the Kurtzs "were agitated" and he "was on the upset side" but claimed not to be mad or angry. No punches were thrown, the confrontation defused, and both parties reentered their cars and drove off. The Trooper eventually recorded the Nissan's license plate number and Richard Kurtz recorded the Jetta's plate number. A short while later, Richard Kurtz called the State Police to report the incident, and the State Police began an investigation.
The Trooper did not report the incident immediately upon returning to work. He explained, "I didn't know that there was going to be an altercation type incident out of this: So, no, I didn'tdidn't make any notification, as far as, a special or anything." In ten years as a marine police officer and five as a road officer, the Trooper had never before had an incident like this and had never been the subject of any prior disciplinary action. No one had ever before accused the Trooper of roadrage or losing his temper.
The investigation continued through the summer and was completed on August 15th. A report was forwarded to the Superintendent on September 3, 2002. The Superintendent responded on September 11, indicating the level of discipline that would be appropriate. On September 17th, the charges and specifications were forwarded to the Office of State Police Affairs for review of legal sufficiency and the Office responded on September 26th. On October 1, 2002, at the direction of the Superintendent, the Division charged Trooper Maguire with violating the two following sections of the Division's Rules and Regulations: (1) Article IV, Section 3.b, providing that "[n]o member shall act or behave in an unofficial or private capacity to the personal discredit of the member or to the discredit of the Division;" and (2) Article V, Section 8, requiring troopers to communicate promptly through the chain of command "all crimes, breaches of the peace, suicides, attempted suicides, fires, accidents, complaints, misconduct, or other information of which the Division takes cognizance, that may come to the member's attention, during the performance of such member's duty." On October 7, 2002, the Division served these charges on Trooper Maguire.
Along with the charges, the Division also advised the Trooper that he would be subject to a summary disciplinary hearing, which according to the Division's Rules and Regulations, Article 1, Section 1(b), would subject the trooper to suspension "from duty with forfeiture of all pay and allowances for a period not to exceed one month from the date of any original suspension."
On November 26, 2002, Captain David Leonardis, "Hearing Officer," conducted a summary disciplinary hearing on these charges. A Deputy Attorney General represented the Division and the Trooper *617 had private defense counsel. At the hearing, the investigating officer testified, as did Richard and Donna Kurtz, and Linda and Trooper Maguire. Captain Leonardis issued a "Recommended Decision" on December 30, 2002.
The hearing officer found "Trooper Maguire's actions were an affront to the Division's ideals of honor, duty and fidelity." He specifically found that the Trooper had "lied under oath" with regard to the Trooper's contention that he had issued summonses against Donna Kurtz before he knew of the Kurtzs' complaints against him. The Hearing Officer found that the Trooper had violated both of the cited rules and recommended a fifteen-day suspension. He further stated that "[d]ue to the deliberate misconception perpetrated by Trooper Maguire during his Hearing, it is recommended that he not be allowed to substitute his suspension with a vacation or compensatory time." Finally, the hearing officer also recommended that the Trooper "be required to attend an anger management program sponsored by the Division."
Both the Trooper's attorney and the Deputy Attorney General submitted to the Acting Superintendent their exceptions to the "recommended decision," with the last submission occurring on February 6, 2003. After granting one "Order of Extension" on March 7, 2003, the Acting Superintendent then issued a "Final Decision" on March 28, 2003.
The Final Decision accepted "the Hearing Officer's credibility assessments" and concurred and specifically adopted "the recommended penalty of fifteen (15) days [suspension]." However, the decision did not find that there was sufficient evidence in the record to conclude that the Trooper "lied under oath." It was from this decision that Trooper Maguire appealed.

II.
On appeal, the Trooper's primary argument is that all of the charges should have been dismissed "due to the Division of State Police's failure to abide by the forty-five day rule under N.J.S.A. 53:1-33." The statute provides that complaints "charging a violation of the [State Police] internal rules and regulations ... shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based."
Based on the pertinent statute, the Trooper argues that the incident occurred on June 29 and the investigation was completed on August 15. The charges were not filed until October 7, "more than one hundred days after the incident." Considering the specific language of the statute, however, we reject the Trooper's argument.
The forty-five day period referenced in the statute begins running after "the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based." N.J.S.A. 53:1-33. See also N.J.S.A. 40A:14-147 (pertaining to municipal police officers and containing similar language as N.J.S.A. 53:1-33).
N.J.S.A. 53:1-10 authorizes the Superintendent to "make all rules and regulations for the discipline and control of the state police." Article I, Section 1 and 2, of the rules adopted by the Superintendent, provides that the Superintendent is to be apprised of any regulatory violations and may order investigations. N.J. State Police Rules & Regulations, art. I, §§ 1-2. Article II, Section 3 states that the Superintendent may issue "written reprimand[s]" or "[o]rder that charges be prepared against [a State trooper] and that a disciplinary hearing be held." Id. at art. II, § 3. Article I, Section 1, also provides *618 that the Superintendent may order general or summary disciplinary hearings or written reprimands. Id. at art I, § 1. Thus, it is the Superintendent who has authority to bring discipline charges against State troopers. See In re Carberry, 114 N.J. 574, 578, 556 A.2d 314, 315-16 (1989).
We believe the relevant statute is unambiguous and clear on its face, and consequently we apply it as written. State v. Butler, 89 N.J. 220, 226, 445 A.2d 399, 402 (1982). The forty-five day period began to run in this matter on September 3, 2002, when the Superintendent received the investigative report. Because charges were filed on October 1, 2002, and served on Maguire on October 7, 2002, the Division has complied with N.J.S.A. 53:1-33.

III.
We move on to address the question, we raised, whether an ALJ should have heard this summary disciplinary proceeding rather than a Division hearing officer. According to the Division rules, the hearing officer has forty-five days from the conclusion of the hearing to complete the recommended report and decision. N.J. State Police Rules & Regulations, art. III., § 6. Within twenty days of receipt of the recommended report and decision, any party may file written exceptions with the Superintendent. Id. at art. III, § 7. The procedure is strikingly similar to that required under the Uniform Administrative Procedural Rules, as adopted by the OAL. N.J.A.C. 1:1-1 to -21.6.
The stark difference between the OAL Uniform Administrative Procedure Rules and the Division rules dealing with summary discipline hearings, however, is that no independent and impartial ALJ hears the trooper's case. Rather, a trooper officer employed by the Division and supervised by the Superintendent hears these cases. Thus, the hearing examiner, who must be higher in rank than the charged officer, presides "over a case in which his own employer agency was an interested party." In re Kallen, 92 N.J. 14, 22, 455 A.2d 460, 464 (1983) (citing Committee Statement to N.J. Senate Bill No. 766, L. 1978, c. 67).
That such a hearing officer can be influenced by policies not part of the record is appreciated by the litigants and often contributes to a feeling that the hearing was less than impartial. Before the OAL was created, for example, "[i]t was widely perceived that the use of agency employees as hearing officers encouraged a bias in favor of the agency and undermined the fairness and impartiality desired in an administrative hearing." Ibid.
A federal court has previously recognized "the reality of command influence in a paramilitary organization like the Division [of State Police]." Rosko v. Pagano, 466 F.Supp. 1364, 1370 (D.N.J.1979). In the case on appeal, for example, the DAG after rendering a very short summation, concluded by driving this point home to the hearing officer. He said, "the Superintendent brought these charges because the facts indicated that the charges were properly brought andand indicated that the violations had occurred." The DAG then told the hearing officer that after he had heard all the evidence, "[I]t's now up to you ... to decide." In filing exceptions, the Trooper's attorney, after strongly questioning the credibility findings made by the hearing officer, "submitted that the hearing which took place on November 26, 2002 was not a fair and impartial hearing."
Such hearings conducted by agency employed hearing officers were common before the development of the OAL. In re Kallen, supra, 92 N.J. at 22, 455 A.2d at 464. When the OAL was created in 1978, the Legislature intended to preclude hearing officers from conducting "contested case" hearings in most administrative proceedings. Ibid.
*619 The Legislature accomplished this significant reform by requiring that the OAL Director assign ALJs to preside over contested cases. N.J.S.A. 52:14F-6. Only certain specifically mentioned agencies, not including the Division of State Police, were exempt from this requirement. N.J.S.A. 52:14F-8(a). The Legislature also allowed agency heads to retain contested cases and "conduct the hearing directly and individually." N.J.S.A. 52:14F-8(b).
There is no question that the Superintendent of the State Police as the agency head of the Division, a state agency, may hear these disciplinary matters himself, "directly and individually." See Carberry, supra, 114 N.J. at 577, 588, 556 A.2d at 315, 321; N.J.S.A. 52:17B-7; N.J.S.A. 52:14B-2(d); N.J.S.A. 52:14B-2(a). But if summary discipline proceedings are contested cases, then the Division's employment of a hearing officer to conduct these proceedings would violate N.J.S.A. 52:14F-8(b).
A contested case under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -25, includes those disputes where by statute or constitutional provision a hearing is required before a State agency to determine "rights, duties, obligations, privileges, benefits or other legal relations of specific parties." N.J.S.A. 52:14B-2(b). To determine whether a contested case exists under the APA, therefore, the following three questions must be addressed: (1) is a hearing required by statute or constitutional provision; (2) will the hearing adjudicate rights, duties, obligations, privileges, benefits or other legal relations; and (3) are specific parties involved rather than large segments of the public? See An APA "Contested Case" May Be No Contest, 129 N.J.L.J. 347, 364 (Oct. 3, 1991).
We can see by answering the three questions that State Police summary discipline actions, such as the instant proceeding, constitute contested cases under the APA. As indicated above, a summary disciplinary proceeding subjects the defendant trooper to a maximum one month suspension without pay. There is no question that specific parties are involved, the Division and Trooper Maguire. Similarly, the adjudication involves a discrete factual/legal question, whether the Trooper's conduct warrants sanction. Furthermore, the enactment of N.J.S.A. 53:1-33 in 2002, granted permanently employed troopers the right to a hearing when threatened with suspension, removal, reduction in rank, or fine. Even before 2002, State troopers, under the State and Federal Constitution, were entitled to a hearing in many types of discipline proceedings. See e.g., Kelly v. Sterr, 62 N.J. 105, 110, 299 A.2d 390, cert. denied, 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973); In re Bernaducci, 85 N.J.Super. 152, 154-55, 204 A.2d 209, 210-11 (App.Div.1964), certif. denied, 44 N.J. 402, 209 A.2d 140 (1965). After 2002 and the enactment of N.J.S.A. 53:1-33, there is no doubt that State troopers are entitled to disciplinary hearings before the Division may impose even a modest fine. Having answered each of the three questions affirmatively, and recognizing the concession by the Division on this point, we conclude that summary disciplinary proceedings are contested cases.
The Division, nevertheless, argues that its rules, providing for hearing officers, constitute "an appropriate exercise of the Superintendent's authority and control over the Division discipline system." The Division, in support of its argument, points to the APA provision exempting "the internal management or discipline of any agency." N.J.S.A. 52:14B-2(e). This statutory provision, however, excludes "statements concerning the internal management or discipline" from compliance with the APA rulemaking rules. The exclusion does not *620 pertain to any of the APA requirements established for the disposition of contested cases.
The Division also argues that summary disciplinary hearings are inappropriate candidates for transmission to the OAL because the APA "should yield to the Superintendent's overriding statutory responsibility to run a large and complex" paramilitary agency. We should, according to the Division, recognize the Superintendent's rules establishing the summary disciplinary process as inappropriate subjects for delegation to an outside agency. This argument, which seems to emphasize the importance of summary disciplinary proceedings to the supervisory control of the Division, is difficult to accept.
No one contends that the Superintendent is not the head of the agency, N.J.S.A. 52:17B-7, and the person statutorily authorized to decide contested cases. N.J.S.A. 52:14B-10(c). Whether a State Police employee or an ALJ from the OAL conducts the disciplinary hearing, the Superintendent retains the statutory authority to decide finally whether to impose any recommended discipline. In re Appeal of Certain Sections of the Unif. Admin. Proc. Rules, 90 N.J. 85, 92, 447 A.2d 151, 155 (1982). Notwithstanding the APA requirements, the Superintendent retains overall control over the Division's discipline system.
It is also a fact that the current Superintendent already transmits to the OAL general disciplinary hearings. General disciplines involve more serious charges than those levied in summary discipline hearings and often result in the most severe penalties that can be imposed.[1]
The Division further contends that any summary disciplines conducted by the OAL "would be unwieldy," and unlikely "to flow smoothly and expeditiously." No specific charges are levied against the OAL in support of this contention, except to point to the statutory requirement that a hearing be conducted no "more than 30 days from the date of service of the complaint," N.J.S.A. 53:1-33, and to express "concerns about whether the OAL could fast-track Division cases to meet the time lines in the statute." The OAL, however, has experience conducting hearings with expedited deadlines. E.g., N.J.A.C. 1:5-13.1 to 13.2 (Council on Affordable Housingprehearing conference scheduled within 15 days of receipt of case, and hearing to be completed "no later than 90 days after transmittal of the matter" to the OAL); N.J.A.C. 1:6A-14.2(c) (Special Educationexpedited *621 hearings may be conducted within 10 days of the hearing request); N.J.A.C. 1:10-12.2 (Emergency Fair Hearings in AFDC or General Assistancehearing "within three days after notification of the hearing request is received"); N.J.A.C. 1:12C-9.1 (Department of Labor and Commission for the Blind and Visually Impaired Vocational Rehabilitationhearing scheduled "no later than 60 days from the date of the request for a hearing"); N.J.A.C. 1:13A-9.1 (Lemon Law"Unless the consumer agrees to a later date, the summary hearing shall be no later than 20 days from the date of acceptance of the consumer's application"). Furthermore, the OAL has promulgated special rules, wherever necessary, to tailor its hearings to the legitimate needs of transmitting agencies, N.J.A.C. 1:5-1.1 to 1:21-18.1, such as in this case the need to keep some trooper disciplinary hearings closed to the public. Kelly, supra, 62 N.J. at 107-110, 299 A.2d at 392-93.

IV.
The Superintendent clearly has authority, with the Governor's approval, to issue "rules and regulations for the discipline and control of the state police." N.J.S.A. 53:1-10. This authority, however, may not be exercised so as to issue a rule in conflict with a statute. N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 82, 411 A.2d 168, 180 (1980). The Division cites Rosko, supra, 466 F.Supp. at 1364, as support for the Division's use of hearing officers, absent disqualifying circumstances, even after the formation of the OAL. Rosko, however, "because of the reality of command influence in a paramilitary organization like the Division," removed both the hearing officer and the Superintendent from the disciplinary proceeding at issue in that dispute. Id. at 1370. Neither Rosko, nor any other case to date, has considered the specific infirmity we address here.
In conclusion, we reject the Division's argument that the Legislature authorized its use of hearing officers by failing to specifically preclude the practice, and we hold that the Superintendent's delegation of authority to a subordinate to conduct summary disciplinary hearings conflicts with N.J.S.A. 52:14F-8(b). The Superintendent's final decision, which reviewed and relied upon the report and recommended decision of a subordinate officer, must therefore be reversed and remanded with a direction that the Division transmit the summary discipline proceeding against Maguire to the OAL for a new hearing before an ALJ.
Because we reverse and remand for a new summary disciplinary hearing before an ALJ, the other issues raised by Maguire, dealing with the sufficiency of the evidence and penalty, are moot.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] The three disciplinary hearings provided for in the Division rules are: General, Summary, and Minor. In contrast with the maximum one-month suspension for summary disciplinary hearings, after a general disciplinary hearing, troopers may be reduced in rank or grade, suspended from duty for more than one month, or dismissed from employment. Minor disciplinary hearings, which are not at issue in this appeal, subject troopers only to written reprimands or suspensions not exceeding five days. We specifically decline to consider in this appeal whether minor disciplinary hearings are also contested cases under the APA.

We also do not consider the meaning of that portion of N.J.S.A. 53:1-33 affording troopers the right to waive a departmental hearing and appeal directly to "any available authority specified by law or regulation." While the Division contends that the "available authority" is the OAL, we cannot find any provision in the Division's Rules and Regulations implementing this contention. Consequently, we specifically decline to determine whether allowing troopers to select either an OAL hearing or a departmental hearing may satisfy the Superintendent's obligations under the APA. We also decline to consider the APA implications of the right contained in N.J.S.A. 53:1-33 to elect contractual procedures set forth in pertinent collective bargaining agreements, which the Division contends is applicable only for written reprimands.