**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0223-19

JACK AND SARAH CAYRE,

      Petitioners-Appellants,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION/LAND USE
REGULATION,

      Respondent-Respondent.

_____

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION/COASTAL AND
LAND USE COMPLIANCE
AND ENFORCEMENT,

      Petitioner-Respondent,

v.

JACK AND SARAH CAYRE,

      Respondents-Appellants.

_____

Submitted May 19, 2021 – Decided June 24, 2021

Before Judges Whipple and Rose.

On appeal from the New Jersey Department of Environmental Protection, Docket Nos. 1310-11-0001.1 and PEA 150001-1310-11-0001.1.

Ansell, Grimm & Aaron, PC, attorneys for appellants (Joshua S. Bauchner and Anthony J. D'Artiglio, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondents (Sookie Bae, Assistant Attorney General, of counsel; Jill Denyes, Deputy Attorney General, on the brief).

PER CURIAM

Appellants Jack and Sarah Cayre appeal from the August 1, 2019 final decision of the Commissioner of the New Jersey Department of Environmental Protection (DEP), denying an after-the-fact Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -45, application regarding the unauthorized construction of a recreational reinforced concrete pavilion into a beachfront coastal bluff. The DEP Commissioner determined the summary decision in favor of the DEP was appropriate, as the undisputed facts demonstrated the Cayres' CAFRA permit application did not meet the requirements of the DEP's Coastal Zone Management Rules, N.J.A.C. 7:7-1.1 to -1.8. We affirm.

The record reveals the Cayres are the owners of oceanfront property located in Deal, which features a beach at the bottom of a coastal bluff. In 2011, the Cayres applied for a CAFRA general permit and a CAFRA individual permit to construct a seawall, pool, and cabana on the property. In 2012, the DEP denied the permits because the pool and cabana were proposed to be constructed on the coastal bluff located on the property contrary to the rule regarding the permit and the setback requirements regarding coastal bluffs. The Cayres sought an administrative hearing but later withdrew the request after engaging in unsuccessful mediation with the DEP's Alternative Dispute Resolution section.

After Superstorm Sandy caused extensive damage to the shoreline in the fall of 2012, the Cayres constructed a stone revetment and recreational pavilion into the bluff without seeking authorization from the DEP. The pavilion is a hollow, poured concrete structure that contains live utility connections including gas, electricity, and sewer service, and it is furnished with amenities such as a restroom, shower, sinks, lights, speakers, television, and a barbeque.

In July 2014, the DEP issued a Notice of Violation to the Cayres for constructing the structures without the necessary permits and approvals. The Cayres submitted an after-the-fact application for a CAFRA individual permit for the pavilion which is the subject of this appeal. In reviewing the after-the-

fact application, the DEP requested a wave scour[1] analysis and a slope stability analysis to evaluate the shore protection functions of the pavilion.

In response, the Cayres submitted a report by J. Richard Weggel, Ph.D., P.E., D.CE, dated April 13, 2015, which did not include a scour analysis for the revetment. According to Dr. Weggel, the revetment and concrete pavilion would not experience direct wave attack during a 100-year intensity storm.[2] He provided an analysis of the revetment's stability under wave attack, including an estimation of individual stone weight based on diameter and an analysis of the revetment stability under gravitational forces. Dr. Weggel concluded that the revetment "will not experience direct wave action during the [100-year storm] event" and that scour at the base of the revetment "is not an issue because of the revetment's location landward of the [100-year storm] water level shoreline."

The DEP denied the after-the-fact permit application on June 1, 2015, for noncompliance with the Coastal Zone Management Rules and cited violations of the rules regarding beaches, N.J.A.C. 7:7-9.22; coastal bluffs, N.J.A.C. 7:7-9.29; flood hazard areas, N.J.A.C. 7:7-9.25; housing use, N.J.A.C. 7:7-15.2; and

---

[1] Scour is a specific form of the more general term "erosion," according to the Army Corps of Engineers.

[2] A 100-year storm refers to a storm, and adverse effects, so severe that it has a one out of one hundred, or one percent, chance of occurring.

coastal engineering, N.J.A.C. 7:7-15.11. Our discussion focuses primarily on the coastal bluff and coastal engineering rules.

"A coastal bluff is a steep slope (greater than fifteen percent) of consolidated (rock) or unconsolidated (sand, gravel) sediment which is adjacent to the shoreline or which is demonstrably associated with shoreline processes." N.J.A.C. 7:7- 9.29(a). The Coastal Bluffs Rule describes the sacrificial shore protection function and value of coastal bluffs, and states that coastal bluffs help with flood control and the prevention of storm damage "by eroding in response to wave action and resisting erosion caused by wind and rain runoff." N.J.A.C. 7:7-9.29(d). The rule states that bluff erosion contributes to beach nourishment in places where the bluff faces an open body of water. Id.

Disturbing coastal bluffs diminishes their resistance to wind and rain erosion, increases the risk of their collapse, and causes "cuts" in the bluffs. Id. Thus, "a minimum construction setback on the stable land is required to protect life and property, and reaffirms the setback requirement of the erosion hazard area rule." Id. The landward limit of a coastal bluff is the area likely to erode within fifty years, "or a point twenty-five feet landward of the crest of the bluff, whichever is farthest inland." N.J.A.C. 7:7-9.29(a).

The Coastal Bluff Rule prohibits development on coastal bluffs with a few exceptions, including shore protection activities which meet the applicable Coastal Engineering Rules. N.J.A.C. 7:7-9.29. Construction that does not otherwise meet the narrow exception for shore protection activities under the Coastal Engineering Rule must be set back at least twenty-five feet from the landward bluff crest. N.J.A.C. 7:7-9.29(a)(2); see also N.J.A.C. 7:7-15.2(e)(2) (stating that development and accessory development must meet twenty-five-foot setback).

The Coastal Engineering Rule requires that coastal engineering measures include a "variety of non[]structural, hybrid, and structural shore protection and storm damage reduction measures," such as "[b]each nourishment, sand fences, pedestrian crossing of dunes, stabilization of dunes, dune restoration projects, dredged material management, living shorelines, and the construction of retaining structures such as bulkheads, gabions, revetments, and seawalls." N.J.A.C. 7:7-15.11(a). It also mandates minimally intrusive shore protection or storm damage management measurements, and requires applicants to show that less impactful alternatives are not feasible; that exercise is known as a "hierarchy" analysis. N.J.A.C. 7:7-15.11(b). The rule requires nonstructural methods "shall be used" unless they are shown to be not feasible or

6

impracticable, in which case hybrid methods that allow for the growth of vegetation, such as stone; riprap; sloped concrete articulated blocks or similar structures; or gabion revetments are acceptable. N.J.A.C. 7:7-15.11(b)(2).

Only if nonstructural and hybrid measures are not feasible or practicable may structural methods or storm damage reduction measures such as bulkheads, revetments, sea walls, or other retaining structures be used. N.J.A.C. 7:7-15.11(b)(3). This "hierarchy" of shore protection measures in the rule demonstrates a goal to minimize the construct of shore protection measures where feasible and practicable. Finally, the Coastal Engineering Rule also requires that a bulkhead "that is subject to wave runup forces," specifically, a bulkhead as described at N.J.A.C. 7:7-9.18, "be designed and certified by a professional engineer to withstand the forces of wave runup." N.J.A.C. 7:7-15.11(d)(l).

The pavilion and revetment did not meet the setback requirement in the Coastal Bluffs Rule, and the pavilion did not fall within the shore protection exemption as set forth in the Coastal Engineering Rule because the rule favors nonstructural solutions to shoreline erosion issues over structural solutions. Further, the Cayres did not demonstrate the infeasibility or impracticality of reconstructing the bluff utilizing vegetation and riprap within the original

7

footprint along the entire waterfront portion of the site. Additionally, the DEP had requested a scour analysis to determine the frequency of storm events that could undermine the pavilion and revetment, and Dr. Weggel's 2015 report did not address the concrete pavilion structure; it only focused on the performance of the revetment. The DEP concluded the information provided did not demonstrate that the pavilion would act as effective shore protection during wave attack. Dr. Weggel omitted a scour analysis, originally concluding "the composition and location of the revetment and pavilion will remain stable and will not experience a scour during predicted storm events."

As a result, on December 17, 2015, the DEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment (AONOCAPA) directing the Cayres to submit a restoration plan for review and appraisal, and assessed a $221,000 civil administrative penalty for the violations. The Cayres requested administrative hearings on the permit denial and AONOCAPA. The DEP transmitted the matters to Office of Administrative Law.

In May 2017, the DEP moved for summary decision on both the permit denial and the penalty. The Cayres filed their opposition, and the DEP filed a reply. Oral argument was held in July. On August 25, 2017, the Administrative Law Judge (ALJ) issued an order granting the DEP's motion for summary

decision on the permit denial. The ALJ denied summary decision on the penalty, finding a question of fact existed as to whether the construction occurred on a "beach" as that term is defined in the regulations, which could have changed the penalty amount in accordance with N.J.A.C. 7:7-29.5(e)(2)(iv). The Cayres moved for reconsideration. The DEP informed the court that it would not pursue a penalty point for construction on the statutorily defined beach and requested that the order on summary decision be converted to an initial decision. On October 19, 2017, the ALJ denied the Cayres' motion with respect to the permit denial, but modified the judge's prior ruling as to the penalty, finding there was a genuine issue of material fact as to whether the Cayres' actions were willful. The ALJ declined the DEP's request to convert the summary decision order into an initial decision.

In November 2017, the Cayres requested permission to submit new information that consisted of a supplemental certification from Dr. Weggel to challenge the denial of the permit, or to return the case to the DEP for further consideration of the new information. In his certification, Dr. Weggel stated that his initial report was intended to address both the revetment and the pavilion. He added that he had more recently learned that both the revetment and the cabana rested on a layer of stone whose gaps were filled with concrete.

A-0223-19

The Cayres claimed the 2017 certification rebutted the DEP's determination that their application was deficient for failure to provide a wave scour analysis. In January 2018, the Cayres submitted another letter to the ALJ, again requesting to expand the record pursuant to N.J.A.C. 1:1-3.2(b), this time enclosing a new supplemental report by Dr. Weggel dated December 28, 2017, which the Cayres purported contained the scour analysis the DEP had requested.

The DEP opposed both requests. The ALJ viewed both of the Cayres' requests to amend their permit application as a second motion for reconsideration based on new information, and denied the motions in her May 24, 2018 order, because they did not show newly discovered photographs of the structure. The ALJ also found that Dr. Weggel's supplemental reports constituted proofs that the DEP did not previously consider in denying the Cayres' permit application. The ALJ found, notwithstanding the supplemental report, the permits were properly denied because even if the photographs and supplemental report provided new contentions under N.J.A.C. l:1-3.2(b) or good cause to reconsider the judge's prior order, the DEP properly denied the application because the Cayres failed to provide the hierarchy analysis required by the Coastal Engineering Rule and the Coastal Bluffs Rule.

On June 8, 2018, the ALJ issued an order of partial summary decision, which consolidated her findings in the prior orders, and she submitted the order to DEP for immediate review pursuant to N.J.A.C. 1:1-12.5(e). The DEP and the Cayres both filed exceptions and replies. The Commissioner denied interlocutory review and returned the matter to the ALJ in accordance with N.J.A.C. 1:1-12.5(e), which allows the agency head to return the order "if immediate review of the order will not avoid unnecessary litigation."

Subsequently, the parties entered into an administrative consent order to resolve the AONOCAPA, leaving only the CAFRA permit denial remaining for decision. The ALJ then issued her initial decision on December 19, 2018, again granting summary decision to the DEP on the permit denial, finding that the DEP was entitled to summary decision because the undisputed facts showed that the permit application failed to comply with the Coastal Engineering Rule and the Coastal Bluff rule. The judge also found that "[a]ssuming that the concrete pavilion is a shore protection measure, it would be classified as 'structural' under N.J.A.C. 7:7-15.11(b)(3)." Thus, the Cayres were required to submit documentation showing that a nonstructural or hybrid shore protection measure was infeasible at that location, and no such showing was made.

The Cayres filed exceptions on December 28, 2018. The Commissioner issued her final decision on August 1, 2019, affirming the ALJ's grant of summary decision to the DEP. The Commissioner rejected the ALJ's conclusion that there was an issue of fact as to whether the pavilion structure qualified as a shore protection measure under the Coastal Engineering Rule. The Commissioner interpreted shore protection measures provided in the rule to reasonably exclude structures such as the pavilion. Nevertheless, the Commissioner separately adopted the ALJ's finding that the Cayres did not demonstrate that the pavilion was the least intrusive shore protection method feasible, thus failing to meet the Coastal Engineering Rule's exception to the Coastal Bluff Rule. This appeal followed.

Before us, the Cayres argue the ALJ misapplied the summary judgment standard by failing to permit a hearing and development of a full factual record, misapplied the CAFRA regulations, and denied them due process. We disagree.

Our review of a motion for summary decision before an administrative agency is largely the same as the standard for granting motions for summary judgment under Rule 4:46-2. Contini v. Bd. of Educ., 286 N.J. Super. 106, 121 (App. Div. 1995). However, our review of an agency's summary decision differs slightly from our de novo review of a court's grant of summary judgment.

Busciglio v. DellaFave, 366 N.J. Super. 135, 139 (App. Div. 2004). Although we employ a de novo standard of review to an agency's determination that there are no genuine issues of material fact, we aim to "give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005) (quoting Smith v. Director, Div. of Taxation, 108 N.J. 19, 25-26 (1987)).

"Generally, 'we will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute.'" In re Camden Cty. Prosecutor, 394 N.J. Super. 15, 22-23 (App. Div. 2007) (emphasis omitted) (quoting Cty. of Gloucester v. Pub. Emp't Relations Comm'n, 107 N.J. Super. 150, 156 (App. Div. 1969)). Although we "must give . . . some deference to [an agency's] 'interpretation of statutes and regulations within its implementing and enforcing responsibility' . . . we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue[.]'" Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (internal citations omitted). Thus, our review of a question of law is de novo. Mount v. Bd. of Trustees, Police & Firemen's Ret. Sys., 233 N.J. 402, 419 (2018).

Here, it is undisputed a permit was required for the construction of the revetment and pavilion structures. The DEP correctly applied the Coastal Bluff and Coastal Engineering rules in denying the Cayres' after-the-fact CAFRA permit application, and the ALJ correctly upheld the DEP's interpretation of those rules. The DEP argued in its motion for summary decision that the hierarchy analysis and scour analysis required by the Coastal Engineering Rule were not provided. The material facts were not in dispute, and even a de novo review of the record, granting deference to the DEP's interpretation of its own enabling statute and regulations, demonstrates that the Cayres did not meet the clear requirements of the Coastal Engineering and Coastal Bluff rules. The Cayres submitted no documentation to the DEP regarding the construction of the previous structure. The rule is unambiguous that such a showing is required. The ALJ rejected the argument that documentation was not required because Superstorm Sandy wiped out the previous revetment, and so do we.

Clearly, the stone revetment, a less obtrusive measure of shore protection, could have been extended in the area where the concrete pavilion was constructed. The Cayres' own engineer certified, "if a storm of the intensity experienced during Superstorm Sandy occurs again, it is likely that neither the stone revetment nor the pavilion will survive intact, and I therefore cannot

14

certify that the pavilion would do so." The Cayres suggest this finding renders the hierarchy analysis unnecessary. This argument was correctly rejected by the DEP and by the ALJ. Moreover, we reject the newly minted assertion that the previous shore protection feature was structural and not hybrid. The Cayres simply failed to meet the burden of providing the required scour analysis and demonstrating that the required hierarchical threshold of a nonstructural or hybrid shore protection measure was impracticable or infeasible.

We also reject the argument that there were material facts requiring a hearing. In order to prevail under this theory, the Cayres would have to demonstrate material relevant facts. Here, the basis of the final decision was the Cayres' failure to provide necessary documentation as a matter of law. Even if Dr. Weggel's 2017 updated certification and report were considered, the permit application fell short of the requirements because it never demonstrated the insufficiency of nonstructural or hybrid measures, a substantive requirement under CAFRA. See Dragon v. N.J. Dep't of Env't Prot., 405 N.J. Super. 478, 483, 489 (App. Div. 2009) (explaining the DEP may not waive the substantive requirements of CAFRA).

Finally, the argument that the Cayres were denied due process lacks merit. After an ALJ renders an initial decision, the agency head may choose to adopt,

15

reject, or modify that decision before issuing its final decision. N.J.S.A. 52:14B-10(c); N.J.A.C. 1:1-18.6. Our Supreme Court has observed that because administrative agencies "are not judicial tribunals," they are vested with "flexibility in exercising their executive role" in the adjudication of contested cases with powers "more expansive and flexible than those of" the judiciary. In re Kallen, 92 N.J. 14, 24-25 (1983) (quoting In re Uniform Adm'n, 90 N.J. 85, 90, 92 (1982)). While an agency's prerogative to determine how the case will proceed is broad, the adjudication process must still "operate fairly and conform with due process principles." Id. at 25 (quoting Laba v. Newark Bd. of Educ., 23 N.J. 364, 382 (1957)). Although "the manner of conducting a hearing may vary, '[a]s long as principles of basic fairness are observed and adequate procedural protections afforded, the requirements of administrative due process have been met.'" Ibid. (quoting Kelly v. Sterr, 62 N.J. 105, 107 (1973)). Applying these principles, we are satisfied the requirements of administrative due process have been met.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION