**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2250-23

YISROEL PICK,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR, and
PANDEMIC UNEMPLOYMENT
ASSISTANCE,

    Respondents.

_____

          Argued September 16, 2025 – Decided October 8, 2025

          Before Judges DeAlmeida and Torregrossa-O'Connor.

          On appeal from the Board of Review, Department of Labor, Docket No. 307625.

          Larry S. Loigman argued the cause for appellant.

          Gina Labrecque, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Gina Labrecque, on the brief).

PER CURIAM

Claimant Yisroel Pick appeals from the February 14, 2024 final agency decision of the Board of Review, New Jersey Department of Labor (Board), affirming a decision of the Appeal Tribunal finding claimant disqualified for Pandemic Unemployment Assistance (PUA) under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. §§ 9001-9141, and, as a consequence, required to refund the $11,730 in benefits already received. After reviewing the record in light of claimant's argument that he was deprived of due process, we affirm.

I.

The following procedural summary is undisputed. Claimant, self-described as an unemployed "gig worker," filed for PUA on September 13, 2020. He was thereafter provided benefits for the weeks ending September 19, 2020, through September 4, 2021. By notice mailed to claimant on August 29, 2022, the Director of the Division of Unemployment Insurance advised claimant's benefits had been adjusted as he was not eligible for unemployment benefits and provided direction concerning the "Appeal Procedure."[1]

---

[1] The copy of the notice provided in claimant's appellate appendix reflects only the front of the document, which states that information concerning the ineligibility determination was "listed on the back of th[e] form."

A-2250-23

Counsel for claimant sent a letter appealing the ineligibility determination, requesting a "complete copy" of claimant's file, and advising that claimant could not determine the basis for the ineligibility decision. Counsel also requested a hearing before the Office of Administrative Law (OAL).

On October 20, 2022, the hearing proceeded before the Appeal Tribunal, telephonically, with claimant and his counsel appearing. The hearing examiner advised that he would conduct an inquiry of claimant, after which claimant could provide any additional testimony or information and claimant's counsel could ask questions. Before testimony commenced, claimant's counsel indicated he had not received "discovery," and the hearing examiner responded that there was "no discovery" other than the "unemployment determination which the claimant appealed from."

Counsel requested "the factual basis for that determination," and the hearing examiner indicated that information had been sent to claimant who "should have this determination in his possession." After offering to read from the determination decision, the hearing officer clarified that there was a second notice sent on August 29, 2022, in addition to the "non-fraud refund notice."[2]

_____

[2] The second notice was not included in the record on appeal; however, counsel for the Board represented at argument before us that the second notice was "in the record " before the Appeal Tribunal.

A-2250-23

When claimant indicated he did not believe he received the second notice, the hearing examiner offered to "mail" the notice to counsel and claimant and stated "that's not a problem at all if you want to look at it." Claimant's counsel indicated he did "not know that . . . establishe[d] anything," and "[a] computer generated form . . . is not evidential."

In response, the hearing examiner again expressly inquired, "[w]e're going back and forth there. I mean, do you want me to . . . dismiss the hearing without prejudice or postpone, so you can look at the determination? That's all I can do at this point. Or do you want to have the claimant move forward?" Claimant's counsel declined an adjournment and instead indicated, "[t]he claimant is going to testify that he does not owe anything to the [S]tate, and that is the only testimony you will have before you. . . . [T]here is no evidence before you to sustain the [S]tate's position." The hearing examiner then clarified, "[s]o do you want to move forward today?" to which counsel responded, "I want to move forward on the basis that this claim by the [S]tate for a refund has to be dismissed."

Before claimant testified, the hearing examiner made clear that the notice had advised that claimant was ineligible for PUA "on the ground that the claimant was considered not attached to the labor market."

A-2250-23

Claimant then testified that at the time he filed for PUA in September 2020, he was not employed full time, but "was doing jobs here and there," in what he termed "odd jobs" and "gig working." When asked, he could not provide the date of his last job before filing his claim and offered no names of employers or specific instances of work performed. Although he stated he would "deliver things to people," "driv[e]," or "work[] when people need[ed] an extra hand," he could not estimate his earnings and, when pressed, indicated "some jobs are smaller, some were bigger," arriving at "a couple hundred." He added that he worked "in warehouses before." Claimant testified he did not "work for any actual companies in 2019 or 2020 under a W-2 tax status," and "was not sure" if he filed taxes for that time period. Although he indicated he filed his claim in 2020 because it was "much harder to find work," he once again asserted he could not estimate the last time he worked before filing the claim.

Claimant's counsel then indicated he had no questions of claimant other than to ask whether he received a second notice that reflected the reasons for his ineligibility. Claimant responded that "it was a few months ago" and he "guess[ed he did not] remember ever seeing anything despi[t]e that one letter." In closing, counsel explained that claimant was "not even employed on a part-time basis," working only "intermittent[ly]," but offered no evidence of that

5

employment, the employer, or the dates claimant performed that work, and requested no opportunity to supplement the record with such information.

The Appeal Tribunal issued its decision on October 20, 2022, and found

> claimant [could] not recall the approximate date that he most recently performed any type of work as a delivery driver. The claimant ha[d] no recollection if he filed taxes while performing this type of work. The claimant chose to file his PUA claim because he was having difficulty finding employment.

The Tribunal further recognized:

> The individual must meet the requirements under Section 2102 (a)(3)(A)(ii)(I) of the CARES Act and have an attachment to the labor market and experienced a loss of wages and hours or was unable to start employment following a bona fide job offer due to COVID-19. In this case, the claimant has not met the burden of proof to show that he was genuinely attached to the labor market. Without specifics regarding his tax documents as a gig worker, or the potential dates of his delivery driving payroll records, it is apparent that the claimant was not involved in the labor market prior to his claim being filed. Hence,[ ]the claimant is ineligible for PUA benefits from 09/13/20 through 09/04/21, under section 2102 of the . . . [CARES] Act.

Thus, the Tribunal affirmed the claimant's ineligibility determination and found him liable for a refund in the amount of "$11,730[] received as benefits for the weeks ending 09/19/20 through 09/04/21, in accordance with N.J.S.A. 43:21-16(d)."

Claimant, through counsel, filed an administrative appeal, reprising the due process argument made before the Appeal Tribunal. On February 14, 2024, the Board affirmed the ineligibility determination. The Board determined claimant was afforded "a full and fair impartial hearing," finding "no valid ground for a further hearing." It added:

> Claimants who have no earnings (in either covered or self-employment) in 2019/2020 (prior to the pandemic), or did not have a bona fide offer of work that was disrupted due to the pandemic, are ineligible for PUA. Since no evidence of the claimant's attachment to the labor market has been presented as required, the claimant does not meet the eligibility requirement for eligibility for . . . [PUA] benefits.

## II.

Claimant now appeals arguing he "was denied procedural due process." He contends the procedure was flawed as he "was ordered to return [benefits already paid to him] without any factual or legal basis being articulated."[3]

"We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard."

---

[3] To the extent claimant argues his administrative appeal should have been transmitted to the OAL, his contention lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We note only N.J.S.A. 43:21-6(d) expressly directs appeals from the denial of benefits to the Appeal Tribunal.

E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). Accordingly, "we will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). The burden to show an agency's abuse of discretion "is on the challenger." Parsells v. Bd. of Educ., 472 N.J. Super. 369, 376 (App. Div. 2022).

"[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). Further, we afford "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020); see also Sullivan, 471 N.J. Super. at 156.

"Claimants bear the burden of proof to establish their right to unemployment benefits." Brady, 152 N.J. at 218. Congress enacted the CARES

Act as a vehicle to afford PUA benefits to certain "covered individual[s]" otherwise ineligible for regular unemployment benefits during the pandemic, but who can establish they have become unemployed for one of the COVID-19-related reasons listed in the statute. Sullivan, 471 N.J. Super. at 153; see also 15 U.S.C. § 9021. A covered individual is one who:

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . .
>
> (ii) provides self-certification that the individual—
>
>> (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—
>>
>>> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;
>>>
>>> (bb) a member of the individual's household has been diagnosed with COVID-19;
>>>
>>> (cc) the individual is providing care for a family member or a member of the

individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

10

> (jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or
>
> (kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section.
>
> [15 U.S.C. § 9021(a)(3)(A).]

N.J.S.A. 43:21-16(d) expressly provides that, absent waiver in certain circumstances, any person having received benefits when ineligible "shall be liable to repay those benefits in full."  When a claimant is determined ineligible for benefits and liable for repayment, that decision will not be disturbed unless it is "'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'"  Sullivan, 471 N.J. Super. at 155-56.

It is well-settled that due process requires that a claimant seeking unemployment benefits "must be given a real chance to present his or her side of the case before a government decision becomes final."  Rivera v. Bd. of Rev., 127 N.J. 578, 583 (1992).  This includes "notice defining the issues and an adequate opportunity to prepare and respond."  McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993) (citing Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978)).

"Administrative hearings in contested cases must 'operate fairly and conform with due process principles.'" In re Kallen, 92 N.J. 14, 25 (1983) (quoting Laba v. Bd. of Educ. of Newark, 23 N.J. 364, 382 (1957)).  However, such hearings "may conform to procedural due process standards that are less restrictive than those imposed in court proceedings." Id. at 26.  "As long as principles of basic fairness are observed and adequate procedural protections afforded, the requirements of administrative due process have been met." Kelly v. Sterr, 62 N.J. 105, 107 (1973); see also In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 466-67 (2006) (recognizing in State actions, "due process is a flexible and fact-sensitive concept," and "a function of what reason and justice require under the circumstances").

We are not persuaded that claimant was deprived of notice and an opportunity to prepare and respond to the PUA ineligibility determination and demand for repayment.  Claimant was provided notice of his ineligibility determination and his right to appeal that determination.  He was then afforded a hearing with respect to the question of his eligibility for unemployment compensation benefits.  Claimant was represented by counsel and offered the opportunity to present evidence of claimant's eligibility but declined to do so.

Although claimant's counsel repeatedly contended claimant had not received the notice detailing the basis for the Board's determination that claimant did not qualify for PUA benefits, he neither requested an adjournment in advance of the hearing nor accepted the offer by the hearing examiner to postpone or dismiss the appeal to afford claimant the opportunity to review the ineligibility decision and prepare for the hearing. Instead, claimant and his counsel insisted the proceeding move forward, even after they were advised at the hearing that claimant's ineligibility derived from his failure to establish a sufficient prior connection to the workforce. Claimant considered and declined the hearing examiner's offer to postpone the proceeding to provide a meaningful opportunity to review and prepare for the hearing at a later date. In these circumstances, we are satisfied claimant received the process to which he was due.

Claimant elected to proceed and provide testimony devoid of any specificity as to his last date of employment, his last employer, or his taxes filed or paid, if any. He presented no proof of prior employment at the hearing or at any stage of the process. Accordingly, we will not disturb the Board's determination, sufficiently rooted in the record, as we discern nothing arbitrary, capricious, or unreasonable about the Board's determination that claimant was

13

not entitled to PUA benefits and liable for return of the payments improperly received.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2250-23