**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0386-23

IN THE MATTER OF THE
PETITION OF MIDDLESEX
WATER COMPANY TO
CHANGE THE LEVELS OF
ITS PURCHASED WATER
ADJUSTMENT CLAUSE
PURSUANT TO
N.J.A.C. 14:9-7.1 to -7.7.[1]

_____

Submitted November 7, 2024 – Decided March 5, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from the New Jersey Board of Public Utilities, Docket No. WR22030138.

Rainone Coughlin Minchello, LLC, attorneys for appellants-intervenors Old Bridge Municipal Utilities Authority and Township of Marlboro Water Utilities Division (Michael R. Burns, of counsel and on the briefs).

Saul Ewing LLP, attorneys for respondent Middlesex Water Company (Shane P. Simon, on the brief).

---

[1] Improperly pled as N.J.A.C. 14:9-71 ET SEQ.

Brian O. Lipman, Director, attorney for respondent New Jersey Division of Rate Counsel (Emily Lam, Assistant Deputy Rate Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Board of Public Utilities (Sookie Bae-Park, Assistant Attorney General, of counsel; Daren Eppley and Terel Klein, Deputy Attorneys General, on the brief).

PER CURIAM

Intervenors Old Bridge Municipal Utilities Authority and Township of Marlboro, Water Utilities Division (collectively, intervenors), appeal from an August 16, 2023 final decision of the Board of Public Utilities (BPU), accepting a stipulation of settlement among the Middlesex Water Company (MWC), Division of Rate Counsel (Rate Counsel), and BPU Staff, which approved MWC's petition to change the levels of its purchase water adjustment clause (PWAC), thereby increasing rate revenues. On de novo review, the BPU adopted the conclusions of an administrative law judge (ALJ), who issued an April 25, 2023 initial decision, recommending approval of the settlement.

On appeal, the intervenors argue the BPU "failed to properly adjudicate [MWC's] rate increase request." Asserting MWC was aware of the issue underlying its PWAC petition, and failed to include that information in the prior base rate case, the intervenors contend the BPU failed to undertake its statutorily

mandated "just and reasonable review" of the proposed settlement rates. The intervenors maintain the BPU failed to conduct an evidentiary hearing on contested issues to determine whether the rate increase was just and reasonable and, as such, their right to due process was violated.

MWC counters the appeal is moot as the intervenors failed to object to the settlement of the ensuing 2023 base rate case and, in any event, the BPU's decision under review was not arbitrary, capricious, or unreasonable. The BPU contends "[MWC]'s PWAC is consistent with the law, just and reasonable, supported by the record, and was set after all parties were afforded due process." Rate Counsel argues the relief sought by the intervenors is beyond the scope of the proceedings held before the BPU, which was limited to whether the BPU's interpretation of its PWAC regulations should be upheld.

We have considered the parties' contentions in view of the governing law and decline to dismiss the appeal as moot. Having addressed the merits, we conclude the intervenors fail to demonstrate the BPU's decision was arbitrary, capricious, or unreasonable. See In re Stallworth, 208 N.J. 182, 194 (2011). We therefore affirm.

A-0386-23

I.

To provide context to the legal issues raised on appeal, we commence our review with well-settled principles, including the BPU's statutory authority. The scope of our review of an administrative agency's final decision is limited. Ibid. An appellate court "will not reverse an agency's decision unless: (1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007); see also N.J.S.A. 48:2-46.

"In assessing those criteria, a court must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). However, an agency must "disclose its reasons for any decision, even those based upon expertise, so that a proper, searching, and careful review by th[e] court may be undertaken." Balagun v. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003). The party challenging the administrative action bears "[t]he burden of demonstrating that the agency's action was arbitrary, capricious[,] or

unreasonable." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

Although "a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue,'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (quoting Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 302 (2011)), an agency's interpretation of a statute it is charged with implementing is "entitled to great weight," Nelson v. Bd. of Educ. of Old Bridge, 148 N.J. 358, 364 (1997). Relevant here, our Supreme Court has held the BPU's "complex valuation formulas and accounting concepts . . . are exactly the type of decisions that our precedents instruct are best left to the agency's expertise." In re Public Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 392 (2001).

"The Legislature has endowed the BPU with broad power to regulate public utilities." Id. at 384-85 (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449-50 (1987)). The Board's decisions are presumed valid "and will not be disturbed unless [the court] find[s] a lack of 'reasonable support in the evidence.'" Id. at 385 (quoting In re Jersey Cent. Power & Light Co., 85 N.J. 520, 527 (1981)).

A-0386-23

The BPU's power is derived from "a complete statutory program of rate-making," including the ability to set base rates and adjustment rates. N.J. Power & Light Co. v. State Dep't of Pub. Utils., 15 N.J. 82, 96 (1954). "One of the BPU's most important functions is to fix 'just and reasonable' rates." Elizabethtown Water Co., 107 N.J. at 450. "To demonstrate that a requested rate increase is just and reasonable, 'the utility must prove: (1) the value of its property or the rate base, (2) the amount of its expenses, including operations, income taxes, and depreciation, and (3) a fair rate of return to investors.'" In re Petition of N.J. Am. Water Co., 169 N.J. 181, 188 (2001) (quoting In re Petition of Pub. Serv. Elec. & Gas, 304 N.J. Super. 247, 265 (App. Div. 1997)).

As a general rule, base rates may not be modified retroactively. Elizabethtown Water Co., 107 N.J. at 451; see also City of Plainfield v. Public Serv. Elec. and Gas Co., 82 N.J. 245, 252 (1980). Accordingly, pursuant to N.J.S.A. 48:2-21, the BPU is empowered to set adjustment rates to avoid utility losses when unforeseen circumstances render existing rates insufficient to provide a fair rate of return. See N.J. Power & Light Co., 15 N.J. at 93-94.

A PWAC is a utility adjustment rate, which "allows a utility to include in rates the costs of fluctuations in purchased water or purchased wastewater treatment, without the necessity of a full base rate case." N.J.A.C. 14:9-7.1(a).

6

The BPU may approve a PWAC "for one year, based on estimates of a utility's purchased water . . . , and expected total volume of water." N.J.A.C. 14:9-7.1(c). Thereafter, the utility must submit "a year-end true[-]up schedule to reconcile the previous year's actual and estimated costs of purchased water," N.J.A.C. 14:9-7.1(d)(1), and "an adjusted PWAC . . . for the upcoming year," N.J.A.C. 14:9-7.1(d)(2). Should the recovery exceed the utility's actual costs, the excess is subject to refund to customers. See N.J.A.C. 14:9-7.4.

II.

Against that legal backdrop, we summarize the facts and procedural history from the record before the BPU. By way of brief background, in May 2021, MWC filed a base rate case, which was resolved by stipulation in November 2021 (2021 base rate case). In December 2021, the same ALJ who issued the initial decision in the present matter, recommended approval of that stipulation. Later that same month, on December 15, 2021, the BPU issued a final decision adopting the ALJ's initial decision.

Three months later, in March 2022, MWC filed the present petition with the BPU seeking approval to modify its PWAC by increasing annual operating revenue. In its petition, MWC asserted in September 2021, the Department of Environmental Protection (DEP) advised MWC that groundwater from its Park

Avenue Wellfield in South Plainfield exceeded the maximum contaminant levels adopted by the DEP on January 1, 2021. MWC explained, with the DEP's approval, MWC temporarily shut down all pumping from the wellfield pending the completion of a new treatment plant in mid-2023. MWC expected the wellfield would remain offline until mid-2023 while it built an enhanced treatment facility. To account for the loss of its supply, MWC incrementally increased its treated water purchases from the New Jersey American Water Company (NJAWC) and anticipated a need to do so until completion of its new facility. To support its petition, MWC cited data from its May 2021 full base rate case.

In March 2022, MWC's petition was transmitted to the Office of Administrative Law as a contested case. Shortly thereafter, the ALJ granted the intervenor's unopposed motion for leave to intervene. Duly noticed public hearings were held virtually in May 2022. Members of the public did not speak at the hearings. Nor did the BPU receive written comments from the public.

In July 2022, MWC moved for emergent relief seeking an immediate increase of its PWAC pending completion of the proceedings before the BPU. The intervenors objected, contending "[MWC] provided inadequate information

to support the proposed PWAC and that a full hearing was required before the [BPU] could issue a decision in this matter."

On September 28, 2022, the BPU granted MWC's application, finding the utility satisfied the same four factors set forth by our Supreme Court to establish injunctive relief. See Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982) (holding a preliminary injunction should not issue absent a showing of (1) irreparable harm, (2) a settled legal right, (3) uncontroverted material facts, and (4) the balance of the equities favor granting the injunction).

Relevant here, the BPU found the governing regulations permitted MWC to recover "on a dollar-for-dollar basis, any increase or decrease in the cost of purchased water above the base cost already allowed in rates by the [BPU]." The BPU further found it permits "recovery of all prudently purchased water costs incurred" and "[t]he PWAC regulations do not contemplate a prohibition in recovery of fluctuations in the cost of purchased water as a result of the shutdown of a wellfield."

Concluding MWC demonstrated the likelihood of success on the merits, the BPU explained:

> The [i]ntervenors have not raised any genuine or relevant issues of fact opposing the PWAC. Rather, the [i]ntervenors claim whether [MWC] has acted prudently and whether [i]ntervenors should be

allocated a portion of the PWAC. These claims are at best questions of prudency and rate design and are at best resolved in a rate case and not a proceeding of limited scope.

Thereafter, the intervenors sought discovery regarding MWC's failure to disclose its knowledge of the presence of environmental contaminants at the wellfield site during the 2021 base rate case. On December 2, 2022, the ALJ denied the intervenors' motion to compel MWC to respond to discovery. The ALJ found the BPU's order granting emergency relief was the law of the case and, as such, the discovery sought was outside the scope of the 2022 PWAC proceeding.

On January 26, 2023, MWC, BPU, and Rate Counsel filed a stipulation of settlement with the ALJ. Opposing the settlement, the intervenors did not sign the stipulation.

Before the ALJ, the intervenors argued they were entitled to an evidentiary hearing. The intervenors contended they opposed the settlement because MWC "exclude[d] information regarding planned large-scale purchase of water from NJAWC . . . and presented a flawed and misleading [cost of service] model to the [i]ntervenors and the [BPU] in the [2021] . . . base rate case and their current PWAC proceeding." MWC countered it was entitled to recover the costs at issue under the BPU's PWAC regulations. Rate Counsel urged the ALJ to approve

the settlement, arguing "the PWAC is a pass-through charge[,]" which "is not intended to be a fully litigated rate case." According to Rate Counsel, a contrary determination would cause the majority of MWC's customers, who were "outside of the areas represented by the [i]ntervenors[, to] pay higher rates . . . result[ing] in unjust and unreasonable rates." Citing N.J.A.C. 14:9-7.1, BPU Staff asserted the stipulation of settlement was in the public interest.

In his initial decision, the ALJ squarely addressed the issues raised in view of the governing law. Citing our decision in Petition of PSE&G, the ALJ rejected the intervenors' contention they were denied an opportunity to fully participate in this matter. The ALJ found the intervenors were "given the opportunity to argue against the stipulation of settlement through [their] brief in opposition and at oral argument."

Addressing the merits, the ALJ quoted the BPU's order granting MWC's application for emergent relief and found the BPU's decision "[wa]s binding precedent and the law of the case." The ALJ elaborated: "The plain language of the [BPU's] order is unambiguous, that the intervenor[s'] 'claims are at best questions of prudency and rate design and are at best resolved in a rate case and not a proceeding of limited scope.'" The ALJ therefore rejected the intervenors'

arguments and recommended approval of the settlement. None of the parties filed exceptions to the ALJ's decision.

In its final decision, the BPU thoroughly addressed the arguments raised before the ALJ and conducted a fulsome review of the record, including the petition, stipulation of settlement, the parties' arguments, and the ALJ's initial decision. Similar to the ALJ, the BPU rejected MWC's procedural and substantive claims. Notably, the BPU echoed its prior ruling and the ALJ's observation that a PWAC cannot be imposed retroactively, is subject to later review by the BPU, and the intervenors could challenge MWC's "prudency" in a later base rate case. The BPU adopted the initial decision and stipulation and directed MWC to file a "true-up schedule" after the PWAC was in effect for one year. See N.J.A.C. 14:9-7.1(d)(1).

We glean from the parties' briefs, on May 15, 2023, MWC filed the 2023 base rate case, seeking to increase base rates and update the base consumption costs, which were utilized to determine future adjustments to its PWAC. See In re Middlesex Water Co. for Approval of an Increase in its Rates for Water Serv. & Other Tariff Charges, BPU Docket No. WR23050292 (N.J. B.P.U. Feb. 14, 2024). The case was resolved without an evidentiary hearing through an order approving the stipulation. Id. at *8. Although the intervenors did not sign the

stipulation, they filed a letter of non-objection. Id. at *3, *8. The 2023 base rate case stipulation adopted the PWAC base consumption and base costs data to determine future PWAC adjustments. Id. at *7. On February 14, 2024, the BPU issued its final decision adopting the initial decision and stipulation. Id. at *8.

Meanwhile, in October 2023, the intervenors filed their notice of appeal in this court. In January 2024, we denied MWC's motion to dismiss the intervenors' appeal as untimely.

III.

Before us, the intervenors reprise the issues raised before the BPU. In particular, the intervenors maintain they were entitled to an evidentiary hearing to challenge the BPU's formula for interpreting the PWAC, which the intervenors contend resulted in their payment of an unfair portion of the PWAC expense and should have been allocated to other rate classes.

Pursuant to our limited standard of review, see Stallworth, 208 N.J. at 194, we affirm substantially for the reasons expressed in the BPU's well-reasoned final decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D), and evinces its "searching inquiry" of the record, Petition of PSE&G, 304 N.J. Super. at 271. In doing so, we conclude

13

the BPU's decision was not arbitrary, capricious, or unreasonable. See Stallworth, 208 N.J. at 194. We add the following comments.

As a threshold matter, we reject MWC's argument that the intervenors' appeal is moot because they failed to object to the settlement of the 2023 base rate case as that case incorporated "the rates resulting from the PWAC proceeding" at issue on this appeal. The stipulation of settlement in the 2023 base rate case apparently belies MWC's claims as it provides "[t]he [p]arties reserve all rights with respect to the PWAC [a]ppeal."[2] Further, on this appeal, the intervenors challenge MWC's purchase of additional water purchases from NJAWC, and those additional purchases apparently were not at issue in the 2023 base rate case. Thus, the 2023 base rate case did not resolve the issues raised here and, as such, the present appeal is not moot. See De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring) ("A case is technically moot when the original issue presented has been resolved, at least concerning the parties who initiated the litigation."); see also Redd v. Bowman, 223 N.J. 87, 104 (2015) ("An issue is 'moot when [a judicial] decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" (quoting Deutsche

---

[2] We glean the terms of the stipulation from the intervenors' reply brief as the parties did not include the stipulation in their appellate appendices.

A-0386-23

Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011))).

Nor are we persuaded the intervenors were denied their right to due process. "Administrative hearings in contested cases must 'operate fairly and conform with due process principles.'" In re Kallen, 92 N.J. 14, 25 (1983) (quoting Laba v. Bd. of Educ. of Newark, 23 N.J. 364, 382 (1957)). However, such hearings "may conform to procedural due process standards that are less restrictive than those imposed in court proceedings." Id. at 26. "As long as principles of basic fairness are observed and adequate procedural protections afforded, the requirements of administrative due process have been met." Kelly v. Sterr, 62 N.J. 105, 107 (1973); see also In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 466-67 (2006) (recognizing in State actions, "due process is a flexible and fact-sensitive concept," and "a function of what reason and justice require under the circumstances"). "[W]here no disputed issues of material fact exist, an administrative agency need not hold an evidential hearing in a contested case." Frank v. Ivy Club, 120 N.J. 73, 98 (1990).

As the BPU found here, the record before the ALJ demonstrates the intervenors were afforded "ample opportunity to argue against the [s]tipulation." The BPU's decision is consonant with our decision in Petition of PSE&G, 304

15

N.J. Super. at 271, where we recognized when a rate case is settled by stipulation "it is important that . . . non-consenting parties be given an opportunity to argue against the stipulations."  Because there were no genuine issues of fact, an evidentiary hearing was not required.

In summary, the sole issue in a PWAC proceeding is whether the BPU's interpretation of its own regulations should be upheld.  Our Supreme Court has long recognized the Legislature empowered the BPU with rulemaking, which includes the authority to set and adjust rates.  The cost allocation is governed by the agency's regulations which includes a complex formula that falls within the agency's expertise.  Because the agency's ratemaking – not its rulemaking – decision was the subject of the PWAC hearing, the intervenors improperly challenged the formula underlying the PWAC regulation.  The intervenors were afforded a full opportunity to litigate their position before the BPU.  Because there exists substantial evidence in the record supporting the BPU's decision that the PWAC stipulation was just and reasonable, we discern no reason to disturb the decision.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0386-23