# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0578-23

M.K.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and MORRIS
COUNTY OFFICE OF
TEMPORARY ASSISTANCE,

     Respondents-Respondents.

_____

Submitted February 5, 2025 – Decided March 13, 2025

Before Judges Mayer and Rose.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Stotler Hayes Group, LLC, attorneys for appellant (Jacqueline A.F. Richardson, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Sookie-Bae Park, Assistant Attorney

General, of counsel; Laura N. Morson, Deputy Attorney General, on the brief).

Johnson & Johnson, attorneys for respondent Morris County Office of Temporary Assistance (John A. Napolitano, Morris County Counsel and William G. Johnson, Specialty County Counsel, on the brief).

PER CURIAM

Petitioner M.K. appeals from a September 7, 2023 final agency decision of the Department of Human Services (DHS), Division of Medical Assistance and Health Services (DMAHS), assessing a 400-day ineligibility penalty on his Medicaid benefits and denying an undue hardship waiver of the penalty. The Assistant Commissioner of DMAHS upheld an initial decision by an Administrative Law Judge (ALJ), following a Medicaid fair hearing. We affirm.

I.

We summarize the pertinent facts and procedural history from the record reviewed by the Assistant Commissioner of DMAHS. M.K. is in his late forties, suffers from multiple sclerosis and other conditions, which have rendered him bedridden. M.K. was admitted to Troy Hills Center, a skilled nursing facility, in May 2022.

A-0578-23

In September 2022, M.K. filed his third[1] application for Medicaid benefits with the Morris County Office of Temporary Assistance (MCOTA). On December 8, 2022, he was approved for Medicaid, with an effective date of October 1, 2022. However, MCOTA assessed an ineligibility penalty of 400 days, from October 1, 2022 to November 4, 2023, due to asset transfers M.K. made within five years of his application for Medicaid benefits. The transfers totaled $150,000: $5,000 to "Xoom.com";[2] two checks, $60,000 and $45,000, for a "Loan" to S.V., a family member; and two wire transfers, $18,000 and $22,000, to an attorney.

Thereafter, in December 2022, M.K. filed an administrative appeal and requested a Medicaid fair hearing to contest the transfer penalty. He also applied for an undue hardship waiver of the penalty.

In February 2023, MCOTA denied the undue hardship waiver, finding "it has not been demonstrated the prongs needed for undue hardship were met." M.K. appealed the denial and requested a fair hearing and more definite statement of reasons on February 15, 2023. He further requested consolidation

---

[1] In August 2022, M.K. applied for Medicaid benefits twice, but his application was denied both times. He did not contest those denials.

[2] M.K. does not dispute the $5,000 transfer to Xoom.com.

A-0578-23

of his appeal of the transfer penalty and appeal of the undue hardship waiver denial. The matter was transmitted to the Office of Administrative Law (OAL) and both appeals were consolidated.

A one-day hearing was held before the ALJ in May 2023. MCOTA presented the testimony of its paralegal specialist and moved various documents into evidence. M.K. did not testify, but called the executive director of Troy Hills Center as a witness on his behalf.[3]

MCOTA's specialist explained the ineligibility penalty was imposed against M.K. because the identified transfers "were not adequately shown to have been used on [his] behalf." In particular, the specialist testified M.K. provided a "typewritten note" to explain the transfers, signed by himself; his wife, N.R.; his wife's brother, P.R.; and P.R.'s wife, S.V. The note stated the $60,000 and $45,000 checks were to reimburse S.V. for "healthcare expenses" paid on M.K.'s behalf while he was in India and for helping M.K.'s mother "with financial needs." However, the note did not reference any promise to reimburse the funds. The specialist stated MCOTA never received a loan agreement

---

[3] For reasons that are unclear from the record, the transcript provided on appeal does not include the executive director's direct testimony and only includes a portion of her cross-examination, which follows the transcriber's notation that there was a "pause in recording." In its responding brief, DMAHS notes the missing portion of the transcript, but M.K. fails to explain the omission.

executed between M.K. and his family members, any medical bills incurred while M.K. was in India, nor any proof that any other expenses were paid on behalf of M.K. by his family members. She also stated M.K. never supplied documentation to explain the $18,000 and $22,000 wire transfers.

Regarding the undue hardship waiver, the specialist testified there was no indication M.K. was not receiving adequate care at Troy Hills Center and no information that M.K. "did anything other than voluntarily transfer" the identified funds. The specialist explained the waiver was denied due to M.K.'s failure to establish the waiver requirements.

Troy Hills Center's executive director explained discharging M.K. to his home would not "be deemed safe" and therefore M.K. would remain at the facility during the ineligibility period, even though the facility would not receive payment. She further explained M.K. would still receive the care he required.

On June 7, 2023, the ALJ issued an initial decision upholding the transfer penalty and denying the undue hardship waiver. Regarding the transfer penalty, the ALJ reasoned M.K. failed to rebut the presumption the transfers totaling $150,000 were made to establish Medicaid eligibility. She characterized the letter as "uncorroborated hearsay" and acknowledged "[n]o testimony was presented at the hearing by any of the individuals who signed [the] letter." The

ALJ further noted M.K. never provided "a loan agreement relating to these transactions, nor any medical bills or other documentary evidence illustrating the cost for any medical treatment received in India."  Therefore, M.K. failed to show the transfers "were made exclusively for a purpose other than to qualify for Medicaid benefits."

As to the undue hardship waiver, the ALJ reasoned there was no evidence the transfer penalty "would deprive M.K. of medical care such that his health or life would be endangered."  Furthermore, the ALJ determined "[M.K.] failed to demonstrate that any of the transferred assets here were ever beyond M.K.'s control and could not be recovered."  Specifically, the ALJ noted M.K. did not show any effort to recover the transferred funds and there was insufficient evidence to support a finding they could not be recovered.

M.K. filed exceptions to the ALJ's initial decision.  In her September 7, 2023 final decision, the Assistant Commissioner of DMAHS concurred with the ALJ's finding that M.K. "failed to account for $150,000 of transfers made."  She agreed the individuals who drafted the letter did not testify at the hearing and therefore the letter was "unsubstantiated hearsay."  She acknowledged while hearsay evidence is admissible before the OAL, the findings of fact "cannot be supported by hearsay alone."  Furthermore, she stated "[n]o contracts, invoices,

A-0578-23

receipts, bills, or other evidence of expenditures" were provided to substantiate M.K.'s claims. The Director also upheld the denial of the undue hardship waiver, largely for the reasons set forth by the ALJ. This appeal followed.

## II.

Our role in reviewing agency decisions is significantly limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In determining whether agency action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
>
> [Ibid.]

A-0578-23

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006); see also Lavezzi v. State, 219 N.J. 163, 171 (2014).

A reviewing court "affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi, 219 N.J. at 171 (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. See Newark, 82 N.J. at 540. "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid. (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Medicaid is a federally created, state-implemented program governed by the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. DMAHS is the State agency that administers the New Jersey Medicaid program. N.J.S.A. 30:4D-5. An individual seeking Medicaid benefits must submit an initial application to the county board of social services, which is reviewed for compliance with the regulatory requirements. N.J.A.C. 10:71–1.1; N.J.A.C. 10:71–2.2(b). An applicant's income and resources must fall below certain limits to be deemed eligible for Medicaid benefits. See 42 U.S.C. § 1396; 42 U.S.C. § 1396a(a)(10)(A).

## A.

We first address the imposition of the asset transfer penalty assessed against M.K. To discourage applicants from depleting assets for the sole purpose of becoming eligible for benefits, "[a]n applicant who transfers or disposes of resources for less than fair market value during a sixty-month look-back period before the individual becomes institutionalized or applies for Medicaid is penalized for making the transfer." A.M. v. Monmouth Cnty. Bd. of Soc. Servs., 466 N.J. Super. 557, 566 (App. Div. 2021); see also N.J.A.C. 10:71-4.10(a); H.K. v. Div. of Med. Assistance & Health Servs., 184 N.J. 367, 380 (2005). The imposition of the penalty is intended to maximize Medicaid

A-0578-23

resources for those truly in need. See Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 219 (App. Div. 2004).

Transfers made within the sixty-month look-back period "are presumed to be improperly motivated to obtain Medicaid eligibility." W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 37 (App. Div. 2007). An applicant can rebut this presumption "by presenting convincing evidence that the assets were transferred exclusively (that is, solely) for some other purpose." N.J.A.C. 10:71-4.10(j). The burden of proof rests with the applicant. Ibid. In determining whether the applicant has successfully rebutted the presumption, the agency "shall not include an evaluation of the merits of the applicant's stated purpose of transferring assets. The determination shall only deal with whether or not the applicant has proven that the transfer was solely for some purpose other than establishing Medicaid eligibility." N.J.A.C. 10:71-4.10(l)(3).

Guided by these principles, we address M.K.'s contention that DMAHS erred in approving the transfer penalty because the "transfers were repayment of a valid debt." He asserts the funds were reimbursements to close family friends who loaned him money so he could receive medical care in India. M.K. also argues DMAHS improperly concluded that evidence of a formal loan agreement

between him and his family members was necessary, because family members "often pay expenses for each other" without a written agreement.

Based on our review of the record, we agree M.K. did not offer sufficient evidence to meet his burden of showing the suspect funds were transferred for a purpose other than to qualify for Medicaid. See N.J.A.C. 10:71-4.10(j). The only evidence M.K. submitted to explain the transfers was the letter signed by individuals who did not testify before the ALJ. Although hearsay evidence is admissible in OAL contested cases, "some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness." N.J.A.C. 1:1-15.5(b).

However, M.K. failed to present a loan agreement, medical bills incurred in India, or testimony from his family members at the fair hearing. Additionally, he presented no testimony concerning the $18,000 and $22,000 wire transfers to an attorney in June 2022. We conclude the final agency decision's assessing an asset transfer penalty against M.K. was reasonable and supported by the record. See R. 2:11-3(e)(1)(D).

We turn to M.K.'s argument he qualified for an undue hardship waiver of the transfer penalty. An applicant can apply for an exception to the transfer penalty if he can establish the penalty causes an undue hardship to himself. N.J.A.C. 10:71-4.10(q). The applicant must "provide sufficient documentation to support the request for an undue hardship waiver." Ibid. An undue hardship exists when:

> i. The application of the transfer of assets provisions would deprive the applicant/beneficiary of medical care such that his or her health or his or her life would be endangered. Undue hardship may also exist when application of the transfer of assets provisions would deprive the individual of food, clothing, shelter, or other necessities of life; and
>
> ii. The applicant/beneficiary can irrefutably demonstrate the transferred assets are beyond his or her control and that the assets cannot be recovered. The applicant/beneficiary shall demonstrate that he or she made good faith efforts, including exhaustion of remedies available at law or in equity, to recover the assets transferred.
>
> [N.J.A.C. 10:71-4.10(q)(1).]

An applicant must satisfy both prongs to qualify for the waiver. Ibid. When the penalty "merely causes the applicant/beneficiary an inconvenience or

restricts his or her lifestyle," no undue hardship exists. N.J.A.C. 10:71-4.10(q)(2).

To meet the first prong of the undue hardship waiver, an application must demonstrate imposition of the transfer penalty "would deprive the applicant . . . of medical care such that his or her health or his or her life would be endangered." N.J.A.C. 10:71-4.10(q)(1)(i). M.K. asserts analysis of the first prong turns on "what would happen if the applicant were discharged" from a healthcare facility, due to the inability to pay. He argues if he were discharged from Troy Hills Center, he would be unable to otherwise pay for necessary healthcare, thus endangering his health. He further contends DMAHS did not consider this possibility in its analysis, thereby rendering the first prong of the waiver "meaningless." M.K. argues public policy reasons support this interpretation as denial of the waiver creates a hardship for healthcare facilities because they are not paid during the penalty period. We disagree.

The proper analysis under N.J.A.C. 10:71-4.10(q)(1)(i) is whether the penalty "would deprive the applicant[] of medical care such that his or her health or his or her life would be endangered." The record establishes M.K. would not be discharged from his facility even though the transfer penalty rendered him unable to pay for the services provided. Indeed, M.K.'s own witness testified

A-0578-23

Troy Hills Center was incapable of discharging him due to the health risk posed, and he would continue to receive the facility's services regardless of M.K.'s ability to pay for those necessary services. M.K. offered no further evidence to support a finding he would be deprived of necessary care in view of the transfer penalty.

To satisfy the second prong of the waiver, an applicant must "irrefutably demonstrate the transferred assets are beyond his or her control and that the assets cannot be recovered. The applicant . . . shall demonstrate that he or she made good faith efforts, including exhaustion of remedies available at law or in equity, to recover the assets transferred." N.J.A.C. 10:71-4.10(q)(1)(ii).

Because we conclude M.K. failed to meet the first prong of the undue hardship waiver, we need not consider the second prong. See N.J.A.C. 10:71-4.10(q)(1) (stating both requirements must be met to establish undue hardship). For the sake of completeness, however, we have considered M.K.'s argument.

M.K. argues he demonstrated the transferred funds cannot be recovered because they were payment of a valid debt, for which he has no legal recourse. He argues "voluntary payment of money for services" rendered is not recoverable. He therefore contends there is no remedy at law or equity for his recovery of the transferred assets.

Before the agency, M.K. failed to present any evidence, other than his unsupported assertions he was unable to recover the funds. In his appellate appendix, M.K. included a certification from his authorized representative, to demonstrate the transferred assets cannot be recovered. Because his representative's certification was not presented to the agency for consideration, it is inappropriate for consideration on appeal. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014). We conclude, as did DMAHS, M.K. failed to satisfy the second prong.

C.

Lastly, M.K. argues DMAHS failed to address his due process arguments. He argues MCOTA's February 1, 2023 denial letter altered the plain terms of N.J.A.C. 10:71-4.10(q)(1)(ii), because MCOTA asserted M.K. failed to "pursue" rather than "exhaust" administrative remedies to recover the transferred funds. M.K. claims MCOTA's change in language from "exhaust" to "pursue" was "self-serving." He claims he "had no reason to believe that he may be required as a condition of eligibility to pursue (let alone exhaust) remedies 'available at law or equity'" until he received the notice of denial. He argues there was no remedy he could have "pursued" to recover the funds. He also contends this

15

notice violated due process because it did not include an adequate statement of reasons.

"Administrative agencies must 'articulate the standards and principles that govern their discretionary decisions in as much detail[] as possible.'" Van Holten Grp. v. Elizabethtown Water Co., 121 N.J. 48, 67 (1990) (quoting Crema v. N.J. Dep't of Env't Prot., 94 N.J. 286, 301 (1983)). Although an agency has broad prerogative to determine how the case will proceed, the adjudication process must still "operate fairly and conform with due process principles." In re Kallen, 92 N.J. 14, 25 (1983) (quoting Laba v. Bd. of Educ. of Newark, 23 N.J. 364, 382 (1957)).

Having considered M.K.'s contentions in view of the record, we are satisfied the Assistant Commissioner provided adequate reasons for denying the undue hardship waiver, addressing both prongs of the waiver under N.J.A.C. 10:71-4.10(q)(1). The failure to meet the second prong was based on M.K.'s inability to provide sufficient evidence to demonstrate that any good faith efforts were made to recover the assets transferred. N.J.A.C. 10:71-4.10(q)(1)(ii) clearly requires the applicant to so demonstrate.

To the extent M.K. argues no remedies are available to him, he failed to provide sufficient credible evidence for the agency to reach this conclusion. The

16

agency's decision was reasonable and supported by the record and M.K. has not demonstrated the decision was arbitrary, capricious, or unreasonable.  See Lavezzi, 219 N.J. at 171; see also R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17